Thank you, Your Honor. May it please the Court, my name is Nicholas Markey. I represent Vy Thach, who has filed this petition, who filed the petition in the District Court, petition for Koronovus, challenging her 2000 conviction under Padilla v. Kennedy. The United States Supreme Court has taken cert in Shedaz, if I'm pronouncing it correctly, and the issue on the cert grant is, is Padilla retroactive? They have, Your Honor, and it is strictly, identically on point to this case. So should we just hold this case until they make their decision? Yes. And the point is this, Your Honor. As the Court is aware, in the letter briefing that the Court directed the parties to brief, we were to address the retroactivity argument, the Danforth argument, whether that would apply to federal habeas, and all those issues appear to be being brought up by Shedaz. While I would like to have an argument to say that I'd like this Court to decide it, I think this Court is well aware that this is a very hot topic that all of the circuits are dealing with. Counsel, let's assume that the Supreme Court will reverse the Seventh Circuit in Shedaz and hold that Padilla is indeed retroactive. How does your client get Koronovus in this case? How, Your Honor? Yes. Through, well, she would get it because she can establish that she was provided ineffective assistance. What's the ineffective assistance of counsel? It's very clear from the colloquies that she was advised both by the trial judge and that her attorney had negotiated what appears to be a very, very favorable plea precisely because they were concerned with immigration. So where's Strickland? It's not favorable. While the Court may be identified and said the consequences, you could be removed. You could be denied naturalization. That is not sufficient enough. What did they have to say? They can't speak for the BIA. No, they shouldn't have to speak for the BIA, but defense counsel should have to be able to speak to those issues. You cannot rely on boilerplate to protect an alien who is facing banishment and removal from the United States. Well, what else should counsel have said? Counsel sort of looked into it. I know that the Court is saying that, well. And on what? On what? Available grounds for relief. It was an aggravated felony. She had no relief. Now, I know that the government maintains that, well, he brought it up in the plea agreement. Great, he brought it up in the plea agreement, but, Your Honors, that's not going to be sufficient. It was in the judgment and sentence. The loss was over $10,000. It was a fraud, and, therefore, it was an aggravated felony. Right. But you know something? At some point, your client has to accept some responsibility for what she's done. I have $82,000 in restitution. She's looking at significant jail time. Her attorney negotiates her a one-day sentence in jail. This looks like a really, really good plea bargain. And she's been advised she negotiates the numbers out of the plea bargain because of the immigration consequences. I'm having a really hard time finding out whether there's ineffective assistance of counsel here. The problem, though, is, Your Honor, what may be a really great sentence, maybe the defendant, for example, avoids a mandatory minimum. An alien defendant who is banished from the United States does never, ever get to come back, and that information should be brought to an alien defendant to make a decision. And the trial judge says, you may have consequences here, and I think it was the AUSA said, yeah, they're concerned that there may be consequences and she may have to leave the country. May have to leave the country is a lot different, Your Honor, than saying you will be deported from the United States. They can't speak for that. That's the BIA. You can't be an attorney and give that kind of advice. You're wrong. That would not be what the – you can't speak for the BIA. You can only say the BIA is likely to do something. Yeah, but as indicated in Padilla, if it's clear on the record that you will be deported based on the facts of the crime, then you have to speak to that. To say that the BIA would say, well, maybe you will, maybe you won't. A defendant, when they are facing mandatory removal, and that's what she was facing. Counsel, this was raised in the Supreme Court's decision in Nijuan, the whole question of whether you have to prove the amount in the complaint, this actually looks like this was very well negotiated. Just after Nijuan, it looks like she's got a losing argument on that one. Well, I would concede she probably does now have a losing argument. Counsel, what bothers me about your client's case is, okay, we've got a bank robbery and more than $80,000 in damages. And if she's convicted, she's got a maximum of 30 years and a minimum, you know, let's say 10 months or something. So is there really any chance – are you arguing there's really a chance that no matter what she was told by her lawyer, that she would have given up a one-day sentence plea agreement? Now, I'm not seeing the prejudice, even if – assuming he was deficient. Because I'm not seeing a real likelihood that a client in that position would not take a one-day deal. Your Honor, I think you have to take it in the context of an alien who faces removal back to a country, a third-world country, where she doesn't have opportunities, where she doesn't have certain – But are you just saying yes or no? Are you saying that there's a significant likelihood that your client, if told she would be deported because of this plea bargain, would have risked going to jail for 30 years and said, try me? Yes. She says it in her declaration. Had I known I'd been deported and removed and banned from the United States, I would not have taken the deal. And that's what it comes down to. These individuals in this posture, where it's an alien who faces removal and banishment from the United States, plus the added penalty of coming back to the United States and facing 1326 – Is there any law existing as to whether an alien just saying that is sufficient to show prejudice? Because I'm just having trouble believing that anyone in their right mind would take that risk. I don't know that there's any law, Your Honor. But as the Sixth Circuit stated in their opinion, citing to State of Washington case Sandoval and we cite to another State of Washington case, Martinez, an alien may take a matter to trial and face significant jail time in the attempt to avoid removal. Now, it's not in the law. It's indicative. But I think that it's there. Okay. Thanks, Mr. Markey. Thank you, Your Honor. Okay. Well, Ms. Brunner, welcome again. Thank you, Your Honor. And do you agree that we should hold our decision pending the Supreme Court's decision? I do, Your Honor. I think the case – I agree with Mr. Markey that it's on all fours, at least as to the Padilla retroactivity issue. I think those issues are there. And for that reason, we would ask you to hold it. Okay. So we'll do that. But let's assume they say it's retroactive. Then what's your response to Judge Bivey's question, is there deficient performance by counsel, is there prejudice? Your Honor, I think there's neither deficient performance nor prejudice. And perhaps I can start with the deficient performance question. I think what we have in the record before the district court that is before you now is a discussion that shows that there was a plea that was negotiated that allowed Ms. Thatch the best chance of avoiding deportation.  The loss amount would have been perhaps more squarely before the jury. But what we know, at least based on this Court's decision in Lee v. Ashcroft, by leaving out the loss amount, even though restitution was imposed in the judgment, that might have provided her a good argument for saying this was not an aggravated felony. And certainly that decision did come after her conviction. So I think the fact that the plea was negotiated, one has to assume in order for Ms. Thatch to win on deficient performance here, either that that was not a good argument and therefore she was misinformed, or worse yet, that counsel negotiated a plea,  but he never mentioned why he was leaving out loss amount, which was in fact included in the original information. And then the superseding information to which she pleaded guilty did not have any amounts of loss associated with the bank fraud. I don't know if you ever get a chance to talk to state judges about immigration consequences that are involved in a state court plea. But if you do, the one thing I would encourage state court judges to do is to ask the defendant being sentenced, what is your understanding of the immigration consequences as a result of your plea? That was not asked in this case, but you have to assume that if it was asked, Ms. Thatch would have said, I understand that I could be removed from the country, but my attorney has done everything he could to minimize that possibility. But I understand there is a possibility that will happen. And it's hard to understand how that would be deficient performance. Well, I would agree, Your Honor. And I think it comes, although the judge didn't ask her specifically what she understood, the judge did ask during the plea colloquy in this case whether she understood that a conviction in this case might affect, and I'll quote here, might affect your right to remain in this country or return to this country if you leave it. And she said yes. And she said yes. But moreover, I would point out that in this case, in terms of prejudice, this is a somewhat unusual case, also noted in the record at ER 13, that she, in fact, had come forward. I think one can try and speculate as to why she had come forward, but the government, the point being the government had not yet charged her. So at that point, what we have is a person who had admitted to the crime and defense counsel attempting to do the best they could with a case that I think, under the circumstances, would have been an incredibly difficult case to try. So then we're left with would you take the deal of one day in prison and probation and the possibility of deportation but not at least a better possibility that you would not be deported versus going to trial. On that prejudice issue, could you address the question I asked here, Mr. Markey? Is there any law about whether prejudice can be shown simply by an alien saying, well, if I'd been told that I would be deported, I would have gone to trial? Your Honor, I don't believe that there is a case squarely that addresses that. I think, though, in this instance, while that may be enough to raise the question for purposes of, say, whether we could go forward with a 2255, I think in this case simply saying it isn't enough, particularly given the record that we have in this case. Counsel, have you looked at the Supreme Court's recent decisions in Lafler and Fry, the Michigan and Missouri case? I have, Your Honor. To deal with plea bargains. And I think under those cases, the Supreme Court is going to require, in order to show ineffective assistance of counsel in a plea bargaining, that you are going to have to say, I would have gone to trial. I think she's going to have to come forward and say, I would have taken my risks with this rather than risk deportation. Your Honor, that certainly may well be. But I think under this record, no matter what standard is applied, that there is no prejudice and no deficient performance. Did she say in the declaration that if she knew she was going to be deported, she would have gone to trial? She says she wouldn't have entered the plea, I think. Isn't that right? I believe that is correct. I'm just quickly looking for it here in the record that's in front of me. Yes, it's ER 22, paragraph 5, I think. Paragraph 5 and 6. Had I been informed of the consequences, et cetera, et cetera, I would not have entered a guilty plea. ER 22. Yes. Exactly. And it does say, had I been informed, or had I been told that I would not have any way to request relief from an immigration judge or the fact that the conviction was an aggravated felony under the Immigration and Naturalization Act, I would not have entered the guilty plea. Good. Okay. If the Court has no further questions, we would ask you to hold the case pending Chydez and then hopefully affirm. Okay. Thank you very much. Mr. Markey, did you want to make a rebuttal? No, Your Honor. No further questions, and we'd ask the same for the government. Thank you. And the Court may give each of you a chance to write a supplemental brief on the Thank you. Thank you, Your Honor. That U.S. v. Stash shall be submitted.
judges: Hawkins, Gould, Bybee